IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARGARET LINDSLEY                    :
                                     :        CIVIL ACTION
                v.                   :
                                     :        NO. 16-941
AMERICAN HONDA MOTOR                 :
COMPANY, INC., ET AL.                :


**MEMORANDUM**

**SURRICK, J.**                                    **JULY  7 , 2017**

Presently before the Court are Defendant American Honda Motor Co., Inc.'s Motion to

Dismiss for Failure to State a Claim (ECF No. 7), and Defendant Ada Technologies, Inc.'s

Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim (ECF No.

19).  For the following reasons, Defendants' Motions will be granted in part and denied in part.

## I.    BACKGROUND

This action involves a product liability dispute.  Plaintiff alleges that she was injured by

her Honda CR-V due to a manufacturing defect caused by Defendants.  Plaintiff brought suit

against Defendants American Honda Motor Co., Inc. ("Honda") and Ada Technologies, Inc.

("Ada"), alleging negligence, strict product liability, breach of warranty, failure to warn,

violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), and negligent infliction of emotional distress.

### A.    Factual Background[1]

On the evening of December 31, 2013, Plaintiff Margaret Lindsley drove her car, a

Honda CR-V, to her friend's house.  (Compl. ¶ 20, ECF No. 5.)  Plaintiff drove the car to the

---

[1] For the purpose of this Motion, the factual allegations in the Complaint are taken as
true. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

front of the house, placed the vehicle's automatic transmission in the "park" position, and waited for her friend to exit the house. (*Id.* ¶¶ 22-23.) With the engine still running, Plaintiff attempted to exit the vehicle to secure items that were loose in the rear area of the car. (*Id.* ¶¶ 23-24.) As she exited the CR-V, the vehicle began rolling backwards despite the fact that she had put the vehicle in the park position. (*Id.* ¶ 26.) Plaintiff became stuck between the door and frame of the vehicle, and was forced to the ground. (*Id.* ¶ 27.) The CR-V's left front tire rolled over Plaintiff's left foot and hand, causing a fracture to her left ankle, serious abrasions to her left foot, and a broken finger on her left hand. (*Id.* ¶¶ 28-29.) As the vehicle continued to roll backwards, the left front tire passed inches away from Plaintiff's face. (*Id.* ¶ 30.) The CR-V continued rolling down the street, hitting her neighbor's cable utility box, and ultimately sinking into a creek in front of her neighbor's yard. (*Id.* ¶ 31.)

In a letter sent to the National Highway Traffic Safety Administration ("NHTSA") on April 12, 2013, Honda acknowledged the existence of a manufacturing defect with its vehicles' Brake Transmission Shift interlock ("BTS interlock"). (*Id.* ¶ 17.) As a result of this manufacturing defect, a vehicle's BTS interlock does not always lock gears in its designated positions when exposed to low temperatures, thus allowing the gear selector to be moved from the "park" position without a driver first pushing down on the brake pedal. (*Id.* ¶ 19.) According to this letter, Honda had discovered the defect no later than April 5, 2013. (*Id.* ¶ 17.) The defective BTS interlock was installed in 204,169 Honda vehicles, including Plaintiff's CR-V. (*Id.*)

### B.     Procedural History

On December 29, 2015, Plaintiff initiated this litigation by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania. (*Id.* ¶ 12.) On

February 26, 2016, Defendant Honda removed the case to this Court.  (ECF No. 1.)  On April 19,

2016, Plaintiff filed a Complaint in this Court.  Plaintiff's Complaint asserts the following claims

against both Honda and Ada:  negligence (Count I); strict product liability (Count II); failure to

warn (Count IV); violations under the UTPCPL, 73 Pa. Stat. Ann. §§ 201-1 *et seq.* (Count V);

and negligent infliction of emotional distress (Count VI).[2]  Plaintiff's Complaint also asserts a

breach of warranty claim against Honda only (Count III).

On April 26, 2016, Honda filed a Motion to Dismiss for Failure to State a Claim pursuant

to Federal Rule of Civil Procedure 12(b)(6), with regard to Count V and Plaintiff's request for

punitive damages.  (Honda MTD, ECF No. 7.)  Plaintiff filed a Response in Opposition to

Honda's Motion to Dismiss on May 13, 2016.  (Pl.'s Resp. Honda MTD, ECF No. 8.)  On

September 13, 2016, Defendant Ada filed a Motion to Dismiss all of Plaintiff's claims for Lack

of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Ada MTD, ECF

No. 19.)   In that same document, Ada included a Rule 12(b)(6) Motion to Dismiss for Failure to

State a Claim with regard to Counts IV and V of Plaintiff's Complaint, as well as Plaintiff's

request for punitive damages.  (*Id.*)  Plaintiff filed a Response in Opposition to Ada's Motion on

October 25, 2016.  (Pl.'s Resp. Ada MTD, ECF No. 21.)  On November 1, 2016, Ada submitted

a Reply brief in support of its Motion.  (Ada Reply, ECF No. 22.)

## II.	LEGAL STANDARDS

### A.	Rule 12(b)(2)

A complaint may be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Procedure when a court lacks personal jurisdiction over a moving defendant.  In deciding a

motion under Rule 12(b)(2), a court "must accept all of the plaintiff's allegations as true and

---

[2] Plaintiff mistakenly lists the negligent infliction of emotional distress claim as "Count V."

construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). In order to "survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker*, 292 F.3d at 368). When the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction" to defeat the motion to dismiss. *Id.* (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

**B.      Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This

"'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

### A.    Jurisdictional Challenge

Defendant Ada asserts that all of Plaintiff's claims against it should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over Ada. Ada argues that this Court lacks personal jurisdiction because Ada does not have any direct contacts with Pennsylvania. Specifically, Ada asserts that its principal place of business is in Ohio, it does not have a relationship with any Pennsylvania business, it does not advertise its products in Pennsylvania, it does not directly sell its products in Pennsylvania, and it has not derived any benefit from the laws or tribunals of Pennsylvania. Plaintiff responds that Ada is subject to this Court's jurisdiction under the stream of commerce theory. Plaintiff asserts that Ada knowingly

placed its defective products into the stream of commerce, which then entered Pennsylvania and led to Plaintiff's injuries.

A district court has personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state where the court sits, and subject to the constitutional limitations of due process. Fed. R. Civ. P. 4(e). Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a nonresident defendant "to the fullest extent allowed under the Constitution of the United States and may be based upon the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). The Due Process Clause of the Fourteenth Amendment requires a nonresident to have certain "minimum contacts" with the forum state for a court in that forum to properly exercise personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be exercised under the theories of general or specific jurisdiction. Here, neither Plaintiff nor Ada contend that there is any basis for general jurisdiction in Pennsylvania. Accordingly, we will consider only whether we have specific jurisdiction over Ada. Specific jurisdiction exists when the claim is related to and arises out of a defendant's "minimum contacts" with the forum State, such that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Once minimum contacts are established, jurisdiction may be exercised if the court determines that doing so would comport with "traditional notions of fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft, Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

none1.     *Stream of Commerce*

Plaintiff relies on the stream of commerce theory to establish that Ada had sufficient minimum contacts with Pennsylvania, and that it purposefully availed itself of the privilege of conducting business in Pennsylvania. *McIntyre*, 564 U.S. at 881. The stream of commerce theory was "developed as a means of sustaining jurisdiction in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 280 (3d Cir. 1994). Under this theory, "a manufacturer may be held amenable to process in a forum in which its products are sold, even if the products were sold indirectly through importers or distributors with independent sales and marketing schemes." *Id.* (citation omitted).

The Supreme Court in *Asahi Metal Industries Co., Ltd. v. Superior Court*, 480 U.S. 102, 107 (1987) "presented three different conceptions of purposeful availment through the stream of commerce, none of which was endorsed by a majority of the Court." *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 204 (3d Cir. 1998). The Justices in *Asahi* "were divided on the level of minimum contacts necessary for a finding of jurisdiction under the stream-of-commerce theory," and therefore the case presented three different theories for what qualified as purposeful availment. *Id*.

Writing for a plurality of four, Justice O'Connor determined that the mere placement of a product into the stream of commerce, without more, was not sufficient to constitute an act of purposeful availment towards the forum state. *Asahi*, 480 U.S. at 112. Justice O'Connor concluded that placing a product into the stream of commerce "must be accompanied by some 'additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum State.'" *Pennzoil*, 149 F.3d at 204 (quoting *Asahi*, 480 U.S. at 112). Such "additional

conduct" includes "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112.

Writing for another plurality of four justices, Justice Brennan rejected Justice O'Connor's "additional conduct" approach. *Id.* at 117. Justice Brennan concluded that so long as there is a "regular and anticipated flow of [the defendant's] products" into the forum state, and the defendant "is aware that the final product is being marketed in the forum State," sufficient minimum contacts will exist. *Id.* Justice Brennan stated that a "regular and anticipated flow" means that "the possibility of a lawsuit [in the forum state] cannot come as a surprise" to the defendant. *Id.*

Justice Stevens, the ninth vote, determined that purposeful availment should be decided based on a consideration of "the volume, the value, and the hazardous character of the components [placed in the stream of commerce]." *Id.* at 122. Justice Stevens offered an estimate for what would constitute purposeful availment, stating that he would "be inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment.'" *Id.*

Since the Supreme Court has failed to provide clear guidance on what constitutes sufficient minimum contacts under the stream of commerce, Circuit Courts have split on the question of which theory to adopt. *See, e.g.*, *Pennzoil*, 149 F.3d at 205 ("Obviously, *Asahi Metal* does not erect any bright-line guideposts—and that point is evidenced in the federal appellate court decisions that have come in its wake."). Some courts have explicitly adopted Justice Brennan's theory. *See, e.g.*, *Unspam Techs., Inc., v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013);

*Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 613-15 (8th Cir. 1994);

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420 (5th Cir. 1993); *Dehmlow v.

Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992). Some courts have adopted Justice

O'Connor's approach. *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450,

459 (9th Cir. 2007); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th

Cir. 2003); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 683 (1st Cir. 1992). Other courts have

avoided a definitive ruling on the issue. *See Williams v. Romarm, SA*, 756 F.3d 777, 784 (D.C.

Cir. 2014); *Commissariat A L'Energie Atomique v. Chi Mei Optoelecs. Corp.*, 395 F.3d 1315,

1322 n.7 (Fed. Cir. 2005); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999).

The Third Circuit is among this third group, applying both Justice O'Connor and Justice

Brennan's tests to determine whether placing a product into the stream of commerce creates

sufficient minimum contacts with the forum State. *See Pennzoil*, 149 F.3d at 207 n.11 (applying

both the Brennan and O'Connor approaches because the Third Circuit "has not manifested a

preference for either of the two standards," and concluding that both standards were satisfied);

*D'Jamoos*, 566 F.3d at 105 ("[W]e have not had occasion to choose between the O'Connor and

Brennan positions."); *Ratcliff v. Best Buy Stores, LP*, No. 15-4192, 2016 WL 7228732, at *2

(E.D. Pa. June 24, 2016) ("The Third Circuit has, thus far, attempted to avoid picking sides in the

splintered debate over the stream of commerce doctrine . . . .").

### 2. Jurisdictional Discovery

In her response to Ada's Motion, Plaintiff states that "[a]t this stage of the case, [she]

cannot present sufficient facts for the Court to consider whether Ada has sufficient contacts with

the Commonwealth of Pennsylvania to evaluate whether specific jurisdiction is proper under

either of the Justices tests established in *Asahi Metal*." (Pl.'s Resp. Ada MTD 10.) Plaintiff

requests that we grant jurisdictional discovery in order to determine whether specific jurisdiction is proper in this case. Ada argues that Plaintiff's request for jurisdictional discovery should be denied because Plaintiff's jurisdictional claim is frivolous.

The Third Circuit has instructed that "[w]here the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983). A jurisdictional claim is clearly frivolous if the plaintiff pleads "a mere unsupported allegation that the defendant 'transacts business' in an area." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (citation omitted). If Plaintiff's allegations suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation and internal quotation marks omitted). "A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (citation omitted). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery . . . ." *Toys "R" Us, Inc.*, 318 F.3d at 456 (citations omitted).

Here, Plaintiff's Complaint contains more than a mere allegation that Ada transacts business in Pennsylvania. Plaintiff alleges that, according to the NHTSA letter, Honda admitted that potentially 204,169 of its vehicles contained Ada's defective gear selector. Honda distributes its vehicles in all fifty states. Since we do not know at this juncture how many of these Honda vehicles were actually delivered for sale in Pennsylvania, and we have no

information regarding any contacts that Ada might have had with Pennsylvania, we cannot begin to reasonably determine whether personal jurisdiction exists over Ada. However, given the sheer number of defective gear selectors that Ada sold to Honda, and that Honda placed in its vehicles that were distributed in all fifty states, and given the nature of the defect, it is only reasonable to permit Plaintiff to engage in jurisdictional discovery to determine whether one or more of the stream of commerce theories applies. Plaintiff's jurisdictional claim is not clearly frivolous.

In addition, jurisdictional discovery is "particularly appropriate" here because Ada is a corporation. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009); *see also Compagnie Des Bauxites de Guinee*, 723 F.2d at 362 ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full [jurisdictional] discovery." (quoting *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966)). The Third Circuit has held that jurisdictional discovery is appropriate when an individual plaintiff is "faced with the difficult task of trying to establish personal jurisdiction over a corporation." *Id.* Where information involving a corporation's business activities lies within the corporation's "sole possession," a plaintiff should be given the opportunity to conduct jurisdictional discovery in order to correct this "information imbalance." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212-13 (3d Cir. 2013) (holding that the district court abused its discretion by granting a 12(b)(2) motion without first allowing jurisdictional discovery); *see also Benjamin v. Trans Union, LLC*, No. 14-07098, 2015 WL 3387158, at *2 (E.D. Pa. May 26, 2015) ("Where, as here, the information about [the] moving defendants' Pennsylvania business activities lies in the sole possession of [the corporations], [the plaintiff] should have the opportunity to conduct jurisdictional discovery to cure the informational imbalance."). Here, information relating to Ada and Honda's business

activities in Pennsylvania lies within the sole possession of Ada and Honda.  Accordingly, we find that Plaintiff must be given an opportunity to engage in jurisdictional discovery in order to cure this information imbalance.

      **B.**      **UTPCPL**[3]

Plaintiff alleges that Honda engaged in deceptive and unfair business practices in violation of the UTPCPL.  Specifically, Plaintiff alleges that Defendant represented that:  the CR-V was consistent with Honda's general reputation for safety; the CR-V was safe for its intended use; the CR-V had safety features that were consistent with those advertised by Honda; and the CR-V was in compliance with the required laws and regulations.

The UTPCPL aims to protect consumers from unfair and deceptive business practices. *See Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008).  The statute provides a cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful."  73 Pa. Stat. Ann. § 201-9.2.  An unlawful act or practice includes "unfair or deceptive acts or practices," such as "representing that goods or services have . . . benefits or quantities that they do not have"; "representing that goods or services are of a particular standard, quality or grade"; and "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *Id.* § 201-2(4)(v), (vii), (xxi).  "[T]o sustain a claim under the UTPCPL, a private plaintiff must:  (1) allege ascertainable loss by pointing to money or property that [s]he would have had but for the defendant's fraudulent actions, and (2) plead facts to support the conclusion that reliance on the

_____

[3] Although Plaintiff originally brought the UTPCPL claim against both Defendants, Plaintiff has agreed to dismiss the claim against Ada.  (Pl.'s Resp. Ada MTD 1 n.1.)

defendant's actions was justifiable." *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) (internal quotation marks and citation omitted).

### 1. *Ascertainable Loss of Money or Property*[4]

The Pennsylvania Supreme Court has held that the UTPCPL "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). A plaintiff must allege ascertainable loss by "point[ing] to money or property that he would have had but for the defendant's fraudulent actions." *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013). Here, Plaintiff listed past and future medical expenses as damages that resulted from the conduct of Defendant. *See Fingles v. Cont'l Cas. Co.*, No. 08-05943, 2010 WL 1718289, at *8 (E.D. Pa. Apr. 28, 2010) (finding that the plaintiff "suffered ascertainable harm in that he was forced to pay his medical expenses"). Plaintiff incurred medical expenses because she was "violently thrown to the ground and dragged" by her CR-V, causing her to sustain a broken ankle, severe abrasions to her foot, and a broken finger. (Compl. ¶¶ 27-29.) Accordingly, we find that Plaintiff has identified that she incurred substantial medical expenses, which qualifies as an ascertainable loss under the UTPCPL.

### 2. *Sufficiency of the Pleadings*

Plaintiff alleges that Honda engaged in unfair and deceptive business practices under the UTPCPL, in violation of subsections five, seven, and twenty-one, which state as follows:

---

[4] Ada, not Honda, argued that Plaintiff failed to sufficiently plead an ascertainable loss. A plaintiff must be given notice and an opportunity to be heard on the legal viability of the complaint. *See Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 (3d Cir. 1976). However, "[t]his notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants." *Berg v. Obama*, 574 F. Supp. 2d 509, 515 n.6 (E.D. Pa. 2008), *aff'd*, 586 F.3d 234 (3d Cir. 2009) (citation omitted). Because Ada raised a defense that is also applicable to Honda, Plaintiff had notice and an opportunity to respond, and therefore we will address this argument, as it applies to Honda.

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Stat. Ann. § 201-2(4). Claims under subsections five and seven require that Plaintiff plead the common law elements of fraud. *See Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 10-11 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007) (holding that a plaintiff must satisfy the common law elements of fraud when asserting a claim under subsections v and vii of the UTPCPL); *Coleman v. Commonwealth Land Title Ins. Co.*, 684 F. Supp. 2d 595, 619 (E.D. Pa. 2010) ("To bring a claim of fraud under the UTPCPL, Pennsylvania state court precedent requires Plaintiffs to meet the elements of common law fraud."). However, a plaintiff alleging deceptive conduct under subsection twenty-one—referred to as the "catch-all provision"—is not required to plead the common law elements of fraud. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013) (recognizing that "a UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct in that a plaintiff does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b)"); *see also Post v. Liberty Mut. Grp., Inc.*, No. 14-238, 2014 WL 2777396, at *3 (E.D. Pa. June 18, 2014) (applying the Third Circuit's decision in *Belmont*, holding that a plaintiff is not required to allege proof of common law fraud when bringing a claim under the deceptive conduct prong); *Chiles v. Ameriquest Mortg. Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) ("[A]ll elements of common law fraud need not be proven if [the] [p]laintiff alleges deceptive conduct."). Here, Plaintiff alleges that Honda engaged in a "deceptive act or practice as defined

by the UTPCPL." (Compl. ¶ 58.) We will analyze subsections five and seven, and subsection twenty-one separately.

i.   Subsections Five and Seven

In order to assert a UTPCPL claim of fraud under Pennsylvania law, Plaintiff must satisfy Rule 9(b)'s heightened pleading requirement. Fed. R. Civ. P. 9(b). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Third Circuit has instructed that plaintiffs must plead with particularity the "circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85-86 (3d Cir. 2015) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiffs ordinarily accomplish this by pleading "the date, place or time of the fraud . . . ." *Silverstein v. Percudani*, 207 F. App'x 238, 240 (3d Cir. 2006). In addition, plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co.*, 620 F. App'x at 86.

Here, Plaintiff alleges that Honda made various representations that the CR-V was safe. Plaintiff does not, however, provide any context with regard to the day or time that those representations were made. Plaintiff does not even provide context with regard to how these representations were made—for example, whether they were made in-person, or via an advertisement on the internet or the television. In order to satisfy Rule 9(b)'s heightened pleading standard, Plaintiff's allegations must be supported with specific details surrounding these alleged representations. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)

("To satisfy Rule 9(b)'s pleading requirements, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."). Since Plaintiff has not alleged the date, time, place or forum in which Honda's alleged representations were made, Plaintiff has failed to meet Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Thomas v. Chase Bank*, No. 09-3803, 2010 WL 1948266, at *2 (E.D. Pa. May 14, 2010) (denying the plaintiffs' UTPCPL claims of fraud because they did not adequately describe the "time place or content of any misrepresentation"). Accordingly, Plaintiff's UTPCPL claims as they relate to subsections five and seven will be dismissed.

ii.     Catch-all Provision

To state a claim for a deceptive act under the UTPCPL's catch-all provision, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008); *see also Walkup*, 147 F. Supp. 3d at 361 (applying "the general plausibility pleading standard set forth in *Twombly* and *Iqbal*" to Plaintiff's deceptive conduct claims under the UTPCPL). Deceptive conduct is defined as "intentional misleading by falsehood spoken or acted. An act or practice is deceptive or unfair if it has the capacity or tendency to deceive." *Chiles*, 551 F. Supp. 2d at 399 (citation and internal quotation marks omitted).

Here, Plaintiff alleges that Honda was aware that 204,169 of its vehicles had a defective BTS interlock. (Compl. ¶¶ 16-17.) Plaintiff alleges that despite this knowledge, Honda represented to consumers that the CR-V was safe, and in compliance with NHTSA guidelines and regulations. (*Id*. ¶¶ 59-60.) Plaintiff alleges that she relied on Honda's representation that her CR-V was safe when she made the decision to purchase the CR-V. (*Id*. ¶ 60.)[5]; *see Monck v.*

---

[5] We note that it is not clear at this juncture exactly when Plaintiff purchased her Honda CR-V.

16

*Progressive Corp.*, No. 15-250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) (noting that in order to assert justifiable reliance, a plaintiff must allege that she pursued certain actions based on the defendant's alleged misrepresentations or wrongful conduct). We are satisfied that "a reasonable consumer in [Plaintiff's] position would have been misled" by Honda's representations that the CR-V was safe. *Landau v. Viridian Energy PA LLC*, No. 16-2382, 2016 WL 6995038, at *14 (E.D. Pa. Nov. 30, 2016); *see also In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011) ("The UTPCPL merely requires a plaintiff to show that the [d]efendant caused the *likelihood* of confusion concerning the goods in question. The result is a lower hurdle for the plaintiff to surmount." (emphasis in original)). Accordingly, since Honda represented to Plaintiff that the CR-V was safe, and Plaintiff purchased the vehicle based on those allegations, we find that Plaintiff has sufficiently pled justifiable reliance.

### 3. Gist of the Action

Honda argues that Plaintiff is not entitled to recovery under the UTPCPL because the gist of the action in this case is in tort rather than in contract. The gist of the action doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims by precluding plaintiffs from recasting ordinary breach of contract claims into tort claims." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). Determination of whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim." *Id.* "To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno v. Erie Ins.*

*Co.*, 106 A.3d 48, 68 (Pa. 2014)). Since applying the gist of the action doctrine requires a fact-intensive judgment, courts are reluctant to dismiss tort claims at the motion to dismiss stage under the doctrine. *See, e.g.*, *Victor Buyck Steel Construction v. Keystone Cement Co.*, No. 09-2941, 2010 WL 1223594, at *3 (E.D. Pa. Mar. 30, 2010) (declining to decide whether the gist of the action precludes the tort claim at the motion to dismiss stage); *Padalino v. Std. Fire Ins. Co.*, 616 F. Supp. 2d 538, 550 (E.D. Pa. 2008) (same); *Lebish v. Whitehall Manor*, 57 Pa. D. & C. 4th 247, 250 (Pa. Com. Pl. 2002) ("We cannot discern at this [pleading] stage of the proceedings if the contract claim is completely redundant to the tort claim.").

Here, Plaintiff does not describe in detail the contractual relationship between Plaintiff and Honda. Without more information, we are unable to discern whether the source of the duty that was breached arose from the parties' agreement or from social policy. *See Redev. Auth. of Cambria Cty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996). At this stage of the proceedings, before the parties have engaged in meaningful discovery, it would be inappropriate to dismiss Plaintiff's UTPCPL claim under the gist of the action doctrine.

Accordingly, we find that Plaintiff has sufficiently alleged a claim of deceptive conduct under the catch-all provision of the UTPCPL.

### C. Failure to Warn (Count IV)

Plaintiff alleges that Ada failed to warn her of the defective gear selector that was installed into her CR-V. Plaintiff's failure-to-warn claim appears to arise under a negligence theory. Plaintiff alleges that Ada "knew or should have known that the CR-V was defective and unsafe," and that it was Ada's duty "to warn and notify Plaintiff of said dangers including but not limited to warning Plaintiff that it was unsafe to drive the CR-V until the defect was remedied." (Compl. ¶ 54.) Ada argues that it did not have a post-sale duty to warn Plaintiff.

In order for a plaintiff to establish liability against a supplier for a negligent failure to warn, she must satisfy the requirements as set forth in section 388 of the Restatement (Second) of Torts, which the Supreme Court of Pennsylvania adopted in *Incollingo v. Ewing*, 282 A.2d 206, 220 n.8 (1971). "[S]ection 388 . . . expressly imposes liability on a supplier of a dangerous chattel for failing to warn the person to whom the chattel is supplied of its dangerous condition, so long as the supplier has reason to know that this person will be unaware of the danger." *O'Keefe v. Sprout-Bauer, Inc.*, 970 F.2d 1244, 1255 (3d Cir. 1992); *see also Kriscuinas v. Union Underwear Co.*, No. 93-4216, 1994 WL 523046, at *5 (E.D. Pa. Sept. 27, 1994) ("[The] supplier [must] warn the consumer where the supplier knows or has reason to know that the product is or is likely to be dangerous . . . and has no reason to believe that those for whose use the product is supplied will realize its dangerous condition." (citations and internal quotation marks omitted)). This section of the Restatement provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388. As a company that supplies gear selector parts to Honda, Ada is subject to liability if Ada knew or had reason to know that its gear selector could be defective or dangerous. Here, Plaintiff alleges that "[b]y no later than April 5, 2013, the Defendants determined that a safety related defect existed" in many Honda CR-V vehicles. (Compl. ¶ 41.) This allegation that Ada was aware of a potential defect with the BTS interlock system is sufficient to demonstrate that Ada knew or should have known that its gear selector

could be dangerous when installed into Honda vehicles.  Furthermore, Ada had reason to believe

that an ordinary driver such as Plaintiff would not realize that the BTS interlock system was

dangerous.  Finally, Plaintiff has alleged that Ada "wholly failed" to inform her of the dangerous

nature of the gear selector that was installed into her Honda CR-V.  (*Id*. ¶ 54.)  Plaintiff has

adequately asserted a failure to warn claim of negligence against Ada.

### D.    Punitive Damages

Plaintiff's Complaint contains six separate counts.  The last paragraph in each count lists

the specific compensatory damages.  In none of the counts does Plaintiff request punitive

damages.  Plaintiff does make a general request for punitive damages in the very last paragraph

of the Complaint, which is entitled Prayer for Relief.  Plaintiff's Complaint fails to specify in

which of her six claims she seeks punitive damages.  Moreover, Plaintiff's Complaint fails to

provide any support for why her claims justify both compensatory and punitive damages.

State law governs the legal standard for punitive damages.  *Griffiths v. CIGNA Corp.*, 857

F. Supp. 399, 409-10 (E.D. Pa. 1994), *aff'd*, 60 F.3d 814 (3d Cir. 1995).  Under Pennsylvania

law, punitive damages are an "extreme remedy available in only the most exceptional matters."

*Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 413 (E.D. Pa. 2012) (quoting *Phillips v. Cricket*

*Lighters*, 883 A.2d 439, 445 (Pa. 2005)).  "As the name suggests, punitive damages are penal in

nature and are proper only in cases where the defendant's actions are so outrageous as to

demonstrate willful, wanton or reckless conduct."  *Hutchison ex rel. Hutchison v. Luddy*, 870

A.2d 766, 770 (Pa. 2005).  Ordinary and gross negligence are not sufficient to show that punitive

damages should be imposed.  *Kee*, 871 F. Supp. 2d at 413 (citing *Phillips*, 883 A.2d at 445).

Here, a majority of Plaintiff's claims allege that Defendants acted negligently.  Plaintiff's claims

of negligence, strict liability, negligent infliction of emotional distress, breach of warranty, and

negligent failure to warn do not allege that Defendants acted outrageously or maliciously. Accordingly, Plaintiff's allegations do not warrant relief under punitive damages.

Plaintiff's UTPCPL claim allows a court to award treble damages at its discretion, and "provide such additional relief as it deems necessary or proper." 73 Pa. Stat. Ann. § 201-9.2(a). However, the Pennsylvania Supreme Court held in *Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007), that "treble damages under the UTPCPL, although punitive in nature, are not constrained by the common-law requirements associated with an award of punitive damages." *Yakubov v. GEICO Gen. Ins. Co.*, No. 11-3082, 2011 WL 5075080, at *4 (E.D. Pa. Oct. 24, 2011) (citing *Rockey*, 932 A.2d at 898). Although the UTPCPL does permit treble damages, courts are split as to whether the "additional relief" language of the UTPCPL allows punitive damages. *Compare Smith v. Bristol-Myers Squibb Co.*, No. 06–6053, 2009 WL 5216982, at *7 (D.N.J. Dec. 30, 2009) ("[P]unitive damages are unavailable under the UTPCPL."); *Hockenberry v. Diversified Ventures, Inc.*, No. 04-1062, 2005 WL 1458768, at *5 (M.D. Pa. June 20, 2005) (dismissing the plaintiffs' punitive damages claim, however permitting plaintiffs to recover under the UTPCPL's treble damages provision); *with Werwinski v. Ford Motor Co.*, No. 00-943, 2000 WL 375260, at *4 (E.D. Pa. Apr. 11, 2000), *aff'd*, 286 F.3d 661 (3d Cir. 2002) ("The UTPCPL allows a court discretionary authority to award punitive damages in addition to actual and treble damages in cases where the court finds such additional relief to be 'necessary or proper.'"), *aff'd,* 286 F.3d 661 (3d Cir. 2002); *Aronson v. Creditrust Corp.*, 7 F. Supp. 2d 589, 593 (E.D. Pa. 1998) (same). However, in a recent decision, the Pennsylvania Superior Court held that the trial court had "discretion to award treble damages, but the trial court was prohibited from imposing punitive damages under the [UTPCPL]." *Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1039-40 (Pa.

Super. Ct. 2016). We are satisfied that Plaintiff may recover treble damages on her UTPCPL claim, but is not entitled to recover punitive damages on that claim.

Accordingly, Plaintiff's general request for punitive damages will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' respective Motions will be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

**_____**
**R. BARCLAY SURRICK, J.**